# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Juan Manuel Lazaro,<br><br>    Plaintiff,<br><br>v.<br><br>BNSF Railway Company and Consolidated Chassis Management LLC,<br><br>    Defendants. | No. 20-cv-6157<br><br>Honorable Nancy L. Maldonado. |
| BNSF Railway Company and Consolidated Chassis Management, LLC,<br><br>    Third-Party Plaintiffs,<br><br>v.<br><br>P&B Intermodal Services, LLC,<br><br>    Third-Party Defendant. | |

## **MEMORANDUM OPINION & ORDER**

Before the Court is Defendant/Third-Party Plaintiff BNSF Railway Company's ("BNSF") motion to transfer its claim for a declaratory judgment against P&B Intermodal Services, LLC ("P&B") to a court in Tarrant County, Texas.[1] (Dkt. 139.) BNSF brings this motion under 28

---

[1] BNSF moves for its claim "to be transferred to a court in Tarrant County, Texas pursuant to 28 [U.S.C. §] 1404," but does not clarify whether it seeks transfer to federal or state court. (Dkt. 139 at 1.) In support of its transfer argument, BNSF relies on case data from the Northern District of Texas, of which Tarrant County, Texas is part, suggesting its intention to move to transfer its claim to the applicable federal district court. Since the Court denies BNSF's motion in its entirety, the Court need not resolve this ambiguity in BNSF's motion.

U.S.C. § 1404(a) seeking to transfer for *forum non conveniens*. For the following reasons, BNSF's motion is denied in full. The parties shall file a joint status report by September 29, 2023, summarizing the relevant rulings in related cases, including the proceeding in Texas state court and Case No. 22-cv-1316 in this district, which has recently been appealed to the Seventh Circuit. In the same joint status report, the parties shall identify any other proceedings that involve related claims and inform the Court of the status of each related case and any potential impact on the claims in this case.

**Background**

This lawsuit arises out of a personal injury claim brought by Plaintiff Juan Manuel Lazaro for injuries allegedly sustained while on the job. Lazaro alleges that he was an employee of P&B and was injured while working as a field technician at a railyard owned and operated by BNSF in Elwood, Illinois. (Dkt. 12 ¶¶ 5, 6, 12–13, 17.) Lazaro brings a claim against BNSF for negligence and violation of the Premises Liability Act, 740 ILCS 130/2.[2] (*Id*. at 4–6.)[3]

On July 8, 2021, BNSF filed a Third-Party Complaint against P&B, alleging "there was in full force and effect a written agreement which generally governed the relationship between BNSF and P&B in connection with various services to be rendered by P&B employees . . . including the work in which [Lazaro] was engaged in at the time of the Incident." (Dkt. 54 ¶ 6.) Based on this "Trailer/Container/Chassis On-Site Repair Agreement" (hereinafter, "the Agreement"), BNSF alleges that it is entitled to contribution from P&B for any losses or damages resulting from Lazaro's claims and that "P&B agreed to remain fully liable for all loss caused or contributed to

---

[2] Lazaro also brings a claim against Consolidated Chassis Management LLC ("CCM") who is not a party to the instant motion to transfer. (Dkt. 12.)

[3] Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

2

by any act or omission of P&B, or its employees." (*Id.* ¶¶ 7, 13–14.) BNSF's Third-Party Complaint brings the following claims against P&B: (1) contribution; (2) breach of contract; (3) contractual indemnity; and (4) declaratory judgment declaring P&B's legal obligations with respect to Lazaro's claims against BNSF.

On October 7, 2022, BNSF filed this instant motion to transfer its claim for a declaratory judgment (Count IV of its Third-Party Complaint) to a court in Tarrant County, Texas, based on the forum selection clause in the Agreement entered into between BNSF and P&B. (Dkt. 139 ¶ 4.) The relevant provision in the Agreement states:

> This Agreement, and all matters related to, associated with or arising in connection with this Agreement, shall be governed by and interpreted under the laws of the State of Texas without regard to the principles of conflicts of law of such state that would result in the application of the laws of any other jurisdiction, and any actions, proceedings or counterclaims brought by either of the parties hereto against the other on any matters whatsoever related to, associated with or arising in connection with this Agreement must be brought exclusively in a court in Tarrant County, Texas. Each party hereby waives any right to claim that Tarrant County, Texas is an inconvenient forum.

(Dkt. 139 ¶ 4.). Previously, on March 17, 2022, BNSF attempted to withdraw its declaratory judgment claim against P&B, which BNSF claims was an effort to enforce the forum selection clause, although that previous motion did not explicitly refer to the forum selection clause. (Dkt. 103.) In that motion to withdraw, BNSF informed the Court that it "has addressed the insurance-driven issues in the District Court [] of Tarrant County, Texas" and believes Tarrant County, Texas to be "the more-proper venue for its declaratory judgment action against P&B." (Dkt. 103 ¶ 5.) On June 14, 2022, the Court denied BNSF's motion to withdraw its declaratory judgment claim because BNSF did not properly present this request to the Court. As the Court stated:

> BNSF should have filed a motion to transfer for forum non conveniens, which is the proper way for a district court to consider moving a portion of a case to a state

3

court based on a forum-selection clause. *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013) ("[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens.").

(Dkt. 123 at 2.) In addition to denying BNSF's motion to withdraw its declaratory judgment claim, the Court also denied three other motions filed by BNSF, P&B, and CCM to dismiss or strike the various cross-claims and affirmative defenses in the third-party pleadings. (*Id.* at 1.) In denying these motions, the Court stated that it would have been premature to rule on the third-party pleadings and expressed its concern about "separate coverage cases requesting the same thing" that the parties filed in addition to their pleadings and motion practice in the instant case.[4] (*Id.* at 2.) The Court noted the likely issue of one or more courts issuing "conflicting decisions of fact and/or law." (*Id.*)

On October 3, 2022, this case was reassigned to the undersigned and a few days later on October 7, 2022, BNSF filed the instant motion to transfer its declaratory judgment count. (Dkts. 138; 139.).

**Legal Standard**

Congress codified the doctrine of *forum non conveniens* through § 1404(a), which states, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); *see Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007). Courts

---

[4] The Court knows of at least two actions involving claims similar to BNSF's third-party complaint: (1) a March 2022 action BNSF filed against P&B in Texas state court seeking essentially the same relief it seeks in the third-party complaint in this action; and (2) a matter removed to this District from Cook County Circuit Court, also in March 2022, between CCM, Twin City Fire Insurance Company, Lazaro, and BNSF involving P&B insurance's obligations, wherein the court entered an order declaring that P&B's insurer has a duty to defend BNSF and CCM, a decision which P&B's insurer has appealed. (*See* Case No. 22-cv-1316, Dkts. 1, 65, 68.)

typically evaluate whether transfer under § 1404(a) is appropriate by balancing several private interest factors, such as the convenience to the parties and witnesses, as well as public interest factors, such as each forum's interest in resolving the dispute. *Atl. Marine*, 571 U.S. at 62–63.

Generally, "[§] 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)); *see Atl. Marine*, 571 U.S. at 62–63. Section 1404(a) allows courts to engage in a "flexible and individualized analysis" of the relevant factors informing convenience and the interest of justice. *Rsch. Automation, Inc., v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (quoting *Stewart*, 497 U.S. at 29). When considering the convenience of transfer, courts consider "the availability of and access to witnesses, and each party's access to and distance from resources in each forum," and "the location of material events and the relative ease of access to sources of proof." *Rsch. Automation*, 626 F.3d at 978. Such factors are often referred to as private interest factors. *See id*. at 979.

The Court also considers whether transfer is in the interest of justice by considering public interest factors including: "docket congestion and likely speed to trial in the transferor and potential transferee forums; each court's relative familiarity with the relevant law; the respective desirability of resolving controversies in each locale; and the relationship of each community to the controversy." *Id*. at 978 (citations omitted). These public interest factors "relate to the efficient administration of the court system." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir. 1986). Even if transfer would be more convenient for the parties and witnesses, consideration of the public interest factors may tip the scale against such a ruling. *See id*. at 220–21. This analysis,

5

however, changes when the parties agreed to a forum selection clause and a party moves to transfer under §1404(a) to enforce the forum selection clause. *Atl. Marine*, 571 U.S. at 62–63. In such cases, "a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Id*. at 62.

## Discussion

### A. Waiver of the Forum Selection Clause

Before embarking on the § 1404(a) analysis, the Court must determine whether the forum selection clause is enforceable in this case. P&B argues that BNSF waived its right to enforce the forum selection clause by filing its Third-Party Complaint outside the pre-agreed forum and participating in this litigation, including by responding to P&B's prior motion to dismiss without raising the forum selection clause. "A rebuttable presumption arises that a party waived the right to enforce a forum selection clause where the party files a claim in a court different than the court mandated by the forum selection clause." *McCoy v. Gamesa Tech. Corp.,* No. 11 C 592, 2012 WL 245162 at *2 (N.D. Ill. Jan. 26, 2012) (citing *Auto. Mechs. Local 701*, 502 F.3d at 743); *Cabintree of Wis., Inc. v. Kraftmaid Cabintry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995) (holding the same for waiver of the right to arbitrate). When determining if a party waived this right, courts should consider the totality of the circumstances and whether the party acted inconsistently with the right to enforce the clause. *See Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 994 (7th Cir. 2011). Relevant factors for this analysis "include whether the allegedly defaulting party acted diligently, participated in litigation or discovery, substantially delayed the request to enforce the forum selection clause, or caused prejudice to the other party." *McCoy*, 2012

WL 245162 at *2.

Upon considering the totality of the circumstances, the Court finds that BNSF waived its right to enforce the forum selection clause by filing and litigating its Third-Party Complaint here in the Northern District of Illinois. BNSF filed its Third-Party Complaint on July 8, 2021, and all of its claims rely on the same Agreement containing the forum selection clause it is now attempting to invoke. Despite first filing its complaint in July 2021, BNSF only attempted to enforce its forum selection clause on March 17, 2022, when it sought leave to withdraw its declaratory judgment claim against P&B. (Dkt. 103.). BNSF thus not only filed its cause of action in this forum, as opposed to the pre-agreed forum in the clause, but delayed in raising the issue in this litigation for over eight months. These facts weigh against finding the forum selection clause enforceable.

BNSF argues that it could not move to enforce its forum selection clause prior to its motion on March 17, 2022, because its declaratory judgment claim was the subject of P&B's motion to dismiss filed on September 21, 2021. The Court disagrees. The Federal Rules of Civil Procedure grant parties the ability to amend their pleadings once as a matter of course within 21 days after service of the complaint, or within 21 days after service of a responsive motion under Rule 12(b), (e), or (f). Fed. R. Civ. P. 15(a)(1). Thus, BNSF could have amended its pleading to withdraw any claims that invoke the Agreement containing the forum selection clause after filing its complaint in July 2021 or after service of P&B's motion under Fed. R. Civ. P. 12(b) and (f) in September 2021. At the very least, the Court sees no obstacle that prevented BNSF from raising its intent to enforce its forum selection clause when responding to P&B's motion to dismiss on October 28, 2021. (Dkt. 86). Instead, BNSF's response defending its claims for breach of contract, contractual indemnity, and for a declaratory judgment against P&B was silent on the existence of

7

any forum selection clause, even though those claims all rely on the Agreement containing the forum selection clause. (*See* Dkt. 86.). In short, there was no reason for BNSF to delay in raising the issue.

Apart from BNSF's lack of diligence in enforcing the forum selection clause, there is the glaring issue that, even if the Court were to grant BNSF's motion to transfer its claim for a declaratory judgment, BNSF would still be proceeding in this District Court with its other claims against P&B that all also arise from the same Agreement that contains the forum selection clause. BNSF is thus explicitly consenting to litigate some claims arising from the Agreement in this District, as opposed to its pre-selected forum. By participating in this litigation, failing to raise the forum selection clause at various points, and by selectively enforcing the forum selection clause for only one of its four claims that rely on the same Agreement, BNSF's actions have been wholly inconsistent with an intent to enforce its rights under the forum selection clause. Further, the Court agrees that P&B would be prejudiced by transferring one claim, given that the parties had already engaged in extensive discovery by the time the parties briefed the instant motion, which is nearing completion in early 2024. Thus, the Court finds that BNSF waived enforcement of its forum selection clause.

**B. Transfer under § 1404(a)**

Given that BNSF has waived enforcement of its forum selection clause, the Court will consider whether a § 1404 transfer to Texas for convenience is appropriate by weighing the applicable private and public interest factors.

8

**I. Convenience to the Witnesses and Parties**

The factors relating to the convenience of the parties and witnesses and the location of material events in the lawsuit all weigh against transferring BNSF's claim to Texas. Specifically, resolution of BNSF's declaratory judgment claim will rely on evidence regarding P&B's actions in Illinois at the railyard where Lazaro was injured, which weighs in favor of keeping this claim close to the material events and witnesses involved. BNSF alleges in its Third-Party Complaint that P&B was under a contractual duty to perform trailer/container/chassis repairs "in a reasonably safe, proper, and adequate manner" at the facility where Lazaro was injured. (Dkt. 54 ¶¶ 6–8.) BNSF further states that P&B was "under a duty to train, equip, and supervise its employees," presumably including Lazaro, for the repair services to be performed in a safe manner. (*Id.* ¶ 8.) These allegations about P&B's obligations and performance under the contract are relevant to BNSF's declaratory judgment claim, which seeks a judgment that P&B must, among other things, defend and indemnify BNSF. (Dkt. 54 ¶ 30.) BNSF's Third-Party Complaint cites the Agreement's indemnity provision which applies in the event of "[i]njury to or death of any person, including employees of either [P&B] or BNSF . . . arising directly or indirectly, in whole or in part, *from the actions or omissions of [P&B] or its employees*." (Dkt. 54 ¶ 23 (emphasis added).) Thus, the outcome of this claim will rely on evidence regarding P&B's actions in Illinois at the railyard where Lazaro was injured. The Court acknowledges BNSF's argument that some relevant events took place in Texas and New Jersey, where BNSF states the parties entered into the Agreement that is at the center of their dispute. However, given the importance of P&B's actions or omissions at the railyard in Illinois where Lazaro was injured, the Court finds that the location of material events weighs in favor of keeping BNSF's claim in Illinois.

For similar reasons, the convenience to the parties and witnesses also weighs in favor of Illinois. Likely witnesses in this case are employees who can testify regarding the conditions and operations or P&B's oversight of the Illinois railyard where Lazaro sustained his injuries. P&B further notes that by the time of its response to BNSF's motion to transfer, the parties had deposed over 20 witnesses in this lawsuit and that "no arguments have been raised that litigating [the declaratory judgment claim] before this court has caused any inconvenience to any parties or witnesses." (Dkt. 145 at 10.) Regarding convenience to the parties themselves, BNSF is a Delaware corporation with its principal place of business in Texas and P&B is a New Jersey corporation with its principal place of business in New Jersey. (Dkt. 146 at 8.) While neither party is based in Illinois, BNSF filed its claims here and even if the Court were to grant the instant motion to transfer, its remaining claims against P&B would be litigated here. Thus, the Court sees no evidence of inconvenience to either party to litigating in Illinois. In sum, these private interest factors all weigh against transfer.

## II. Public Interest Factors

### 1. Court Congestion

Of the factors informing whether transfer would be in the public interest or the interest of justice, only the consideration of court congestion clearly favors transfer to Texas, at least the Northern District of Texas. Courts consider administrative difficulties stemming from court congestion which requires courts to consider "the speed with which a case can come to trial and be resolved." *In re Factor VIII or IX Concentrate Blood Prods. Litig.*, 484 F.3d 951, 958 (7th Cir. 2007). BNSF cites to the U.S. District Court – Judicial Caseload Profile, which indicates that in the Northern District of Texas in the 12-month period ending on March 31, 2022, the median time

for civil cases to go to trial was 25.1 months after filing, whereas in the Northern District of Illinois, the median time was 53.8 months. (Dkt. 139 at 5 (citing United States District Courts – national Judicial Caseload Profile[5]).) Based on this data, cases in the Northern District of Texas have typically proceeded to trial more quickly than in the Northern District of Illinois, weighing in favor of transfer. However, as discussed below, the Court finds that the other public interest factors weigh against transfer.

### 2. Applicable Law

An additional public interest factor is "the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action." *Kamel v. Hill-Rom Co., Inc*, 108 F.3d 799, 803 (7th Cir. 1997). This lawsuit relies on diversity jurisdiction per 28 U.S.C. § 1332 given that Lazaro is a citizen of Illinois, BNSF is a citizen of Texas, P&B is a citizen of New Jersey, and the parties are asserting state law claims. (Dkts. 12 at 2, 54 at 1–2.) "Federal courts hearing state law claims under diversity or supplemental jurisdiction apply the forum state's choice of law rules to select the applicable state substantive law." *McCoy v. Iberdrola Renewables, Inc*., 760 F.3d 674, 684 (7th Cir. 2014). BNSF argues that Texas law must apply to its claims against P&B pursuant to the choice of law provision in the Agreement. (Dkt. 139 ¶ 15.) P&B argues that BNSF has waived its ability to invoke the choice of law provision in the Agreement because it failed to raise this issue when briefing a motion to dismiss in this case where it relied on Illinois law. (Dkt. 145 at 12–13.) A party waives its choice of law argument by failing to raise it and acquiescing to the application of the forum's law. *Iberdrola Renewables*, 760 F.3d at 684–85. Here, BNSF argues that "[t]his is the first time choice of law and waiver has been raised," and it

---

[5] Available at: https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0331.2022.pdf

affirmatively argues that Texas law should apply per the choice of law provision in the Agreement. (Dkt. 146 at 9.).

A year before making this argument, however, BNSF responded to P&B's motion to dismiss its Third-Party Complaint and relied heavily on Illinois contract law to defend its claims against P&B, which all rely on the Agreement containing the choice of law provision. (*See generally* Dkt. 86 (citing Illinois state court decisions and statutes throughout in defending its Third-Party Complaint).) Nowhere in its response did BNSF invoke Texas law or reference the choice of law provision. BNSF thus clearly acquiesced to the application of Illinois law when defending its claims against P&B in October 2021 and now is attempting for the first time to argue that Texas law must apply pursuant to the choice of law provision. To BNSF's point that this motion is the first instance choice of law has been raised in this case, the Court acknowledges that its rulings to date have not reached the merits of BNSF's claims against P&B, and thus, the Court has not had reason to rule on what law applies. The Court nonetheless finds that BNSF has waived its argument that Texas law must apply to its contract claims, including its declaratory judgment claim, given its acquiescence to Illinois law a year prior to filing this instant motion. Given this finding, this factor weighs against transfer to Texas.

**3. Community Relationship to the Controversy**

Regarding the community's relationship to this litigation, the Court also finds that this factor weighs against transfer. Similar to the Court's finding that material events took place in Illinois at the railyard, communities in this district will likely have an interest in the outcome of BNSF's declaratory judgment claim against P&B since it involves P&B's maintenance of the

railyard and supervision of its employees at this worksite in Illinois.

### 4. Trying Related Litigation Together and the Efficient Administration of the Court System

The public interest in "trying related litigation together" weighs against transfer. *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1169 (N.D. Ill. 1995) (quoting *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989)). As already explained, Lazaro's claims against BNSF will involve similar questions of fact regarding the operations of the railyard where Lazaro was injured. Thus, it serves the interest of justice to consider claims involving P&B's contract obligations to BNSF alongside Lazaro's claims against BNSF since these claims will involve similar questions of fact.

Finally, the Court returns to the underlying purpose of the public interest analysis for a motion to transfer, which is "the efficient administration of the court system." *See Vandeveld,* 877 F. Supp. at 1169. Unfortunately, there are already several pending actions involving related issues of liability for Lazaro's injuries. This Court noted in a prior order that, "Defendants and Cross-Claimants BNSF and CCM have each filed separate coverage cases requesting the same thing." (Dkt. 123 at 2 (expressing its concern that the separate litigation over coverage issues will result in "conflicting decisions of fact and/or law.")). Further, the Court understands that in March 2022, BNSF sued P&B in Texas state court seeking essentially the same relief it seeks in the Third-Party Complaint in this action. (*Compare* Dkt. 145-2 ¶ 18 (requesting the Texas state court to declare that the Agreement "requires P&B to defend BNSF against the claims in the Illinois lawsuit and to indemnify BNSF against any losses, damages, costs, and expenses arising from the Illinois law.") *with* Dkt. 54 ¶ 30 (requesting the Court to declare that "P&B is obligated to defend, indemnify and hold harmless BNSF against all claims in the Lawsuit.") Further, there is an

13

additional lawsuit in this district between CCM, Twin City Fire Insurance Company, Lazaro, and BNSF involving P&B insurance's obligations. That court recently issued an order declaring "that P&B's insurer, Twin City Fire Company owes [BNSF and CCM] a duty to defend against Lazaro's suit," a decision which Twin City Fire Insurance is currently appealing to the Seventh Circuit. *Consolidated Chassis Management LLC v. Twin City Fire Insurance Co.,* No. 22-cv-1316, at Dkt. 65 at 2 (N.D. Ill. June 21, 2023); *see also id*. at Dkt. 68. Given these lawsuits, BNSF's claim for a declaratory judgment already seems to be the center of litigation in multiple fora, including two cases in this District Court. As explained earlier, it is unclear if BNSF sought to transfer its declaratory judgment claim to the federal court in Tarrant County, Texas or the state court there. To the extent it did not seek to consolidate its claim with the pending state court case, it would be counter-productive to add yet another forum to the fray. *See Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy, and money that [§] 1404(a) was designed to prevent."). Given the serious concerns of inefficiency and duplicative litigation, transfer to yet another forum would not serve the interest of justice.

After weighing these relevant factors, the Court holds that transfer of BNSF's claim for a declaratory judgment against P&B serves neither the interest of justice nor the convenience of the parties and witnesses in this lawsuit. Thus, the Court denies BNSF's motion to transfer under § 1404(a).

14

**Conclusion**

For the foregoing reasons, BNSF's motion to transfer its claim for a declaratory judgment against P&B is denied. The parties shall file a joint status report by September 29, 2023 summarizing the relevant rulings in related cases, including the proceeding in Texas state court and Case No. 22-cv-1316 in this district, which has recently been appealed to the Seventh Circuit Court of Appeals. In the same joint status report, the parties shall identify any other proceedings that involve related claims, and inform the Court of the status of each related case and any potential impact on the claims in this case.

ENTERED: 9/15/23

_____
Nancy L. Maldonado
United States District Court Judge